**TENNESSEE GAS PIPELINE COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**United Gas Pipe Line Company, et al., Intervenors.**

**No. 90–1618.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 10, 1992.

Decided July 14, 1992.

---

Marilyn L. Doria, Washington, D.C., with whom Ernest B. Abbott, Houston, Tex., Robin M. Nuschler, and Susan Brooks, Washington, D.C., were on the brief, for petitioner.

Katherine Waldbauer, Atty., Federal Energy Regulatory Commission ("FERC"), with whom William S. Scherman, Gen. Counsel, FERC, Jerome M. Feit, Sol., FERC, and Joseph S. Davies, Deputy Sol., FERC, Washington, D.C., were on the brief, for respondent. Dwight C. Alperin, Atty., FERC, Washington, D.C., also entered an appearance for respondent.

Stephen R. Melton, Houston, Tex., entered an appearance for intervenor United Gas Pipe Line Co.

Carolyn Y. Thompson, Washington, D.C., and Juanita Feigenbaum, St. Louis, Mo., entered appearances for intervenor Mississippi River Transmission Corp.

Sherrie Rutherford, Houston, Tex., David B. Ward, and Allan W. Anderson, Jr., Washington, D.C., entered appearances for intervenor Northern Natural Gas Co., et al.

Before BUCKLEY, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

This case concerns an interim rule issued by the Federal Energy Regulatory Commission requiring advance notice and disclosure by natural gas pipeline companies of the construction of new facilities or the replacement of existing ones. The Com-

mission promulgated the interim rule without the notice and opportunity for comment required by the Administrative Procedure Act. It claimed that the rule fell within the "good cause" exception of the Act because (1) it is an interim measure, and (2) it is needed in order to avoid the environmental damage that might otherwise occur if pipelines accelerated construction and replacement activities to avoid the requirements of a final rule. Despite the minimal reach of the interim rule, we conclude that the Commission failed to provide a sufficient basis for invoking the good cause exception.

## I. BACKGROUND

Section 2.55(b) of the Federal Energy Regulatory Commission's regulations permits a natural gas pipeline company to replace existing facilities without prior authorization pursuant to section 7(c) of the Natural Gas Act, 15 U.S.C. § 717f(c) (1988). See 18 C.F.R. § 2.55(b) (1991). Section 284.3(c) of the regulations provides automatic authorization for the construction of facilities to be used for the transportation of natural gas pursuant to section 311 of the Natural Gas Policy Act of 1978, 15 U.S.C. § 3371 (1988). See 18 C.F.R. § 284.-3(c) (1991).

On August 2, 1990, the Commission issued an interim rule as well as a Notice of Proposed Rulemaking ("NOPR") for a final rule. *See Interim Revisions to Regulations Governing Construction of Facilities Pursuant to NGPA Section 311 and Replacement of Facilities,* 55 Fed.Reg. 33,011 (1990). The interim rule requires interstate natural gas pipelines to provide the Commission with thirty days' advance notice of any replacement of existing facilities under section 2.55(b) and of the construction of new facilities pursuant to section 284.3(c). In the case of new construction, the rule requires that the notification include: (1) a brief description of the facilities; (2) evidence of compliance with the environmental conditions of 18 .C.F.R. § 157.206(d); (3) a map showing the location of the facilities; and (4) a description of the procedures to be used for erosion control, revegetation and maintenance, and

stream and wetland crossings. *See* 55 Fed. Reg. 33,013-14. When existing facilities are to be replaced, the rule requires the notification to include items (1), (3), and (4) above. *Id.* at 33,014. The agency estimated that compilation of this information would take approximately four hours per notice. *Id.* at 33,013.

The Commission explained that it was issuing the interim rule without notice and comment or prepublication but was instead invoking the good cause exception of the APA, 5 U.S.C. § 553(b)(B) (1988), which permits an agency to dispense with those requirements under certain circumstances. *See* 55 Fed.Reg. 33,012. In support of this decision, the Commission emphasized the interim nature of the rule, the fact that the notification requirements were not unduly burdensome, and the public interest in oversight during the period before a final rule could be issued. *Id.* at 33,012-13. The agency was particularly

> concerned that construction activities may take place during the period of time between issuance of the NOPR and adoption of a final rule without the opportunity for Commission intervention. Once the NOPR is issued, pipelines may respond to the proposed changes in the regulations by commencing construction in order to avoid either the inherent uncertainty associated with proposed changes to existing regulations or application of the proposed changes, if adopted, to a particular project.

*Id.* at 33,014. To ensure that the establishment of a procedure to review construction and replacement activities for potential environmental damage would not itself be the source of such damage, the Commission concluded that "it is imperative that the opportunity for some form of oversight on an interim basis be provided immediately." *Id.*

On August 17, 1990, petitioner Tennessee Gas Pipeline Company moved for clarification of the interim rule. Tennessee asked whether the description of facilities to be replaced could consist of a general description of the segment of pipeline that is scheduled for inspection, as the specific

facilities requiring replacement can only be identified in the course of field testing. At the same time, Tennessee argued that the Commission's finding of good cause was flawed, as the Commission had focused on the interim nature of the measure and had otherwise failed to justify its invocation of the exception. Before any agency could rule on the motion, Tennessee moved for rehearing, again claiming that good cause had not been established. Tennessee further argued that the interim rule, if not properly interpreted, would conflict with Department of Transportation regulations requiring immediate replacement of damaged pipe that creates a safety hazard. *See* 49 C.F.R. §§ 192.465 and 192.703 (1991).

On September 13, 1990, the Commission issued an *Order Addressing Requests for Clarification*, 52 FERC ¶ 61,252 (1990). It agreed that the interim rule would be satisfied by the identification of the portions of pipelines scheduled for inspection and a listing of the repairs that might be required. *Id.* at 61,876. The Commission also made it clear that the rule did not conflict with the Department of Transportation's regulations, as the Commission's own regulations take precedence over the interim rule and allow for immediate replacement of facilities that constitute a safety hazard, subject to a subsequent reporting requirement. *Id.* at 61,877 (citing 18 C.F.R. § 284.262(a)(1)(iii)).

In a later *Order Denying Requests for Rehearing and Granting Requests for Clarification*, 53 FERC ¶ 61,140 (1990) ("*Order Denying Requests*"), the agency rejected Tennessee's challenge to the immediate application of the interim rule. It again stated that such application was necessary to forestall "the possibility that some companies might rush out and hastily install or replace pipeline in order to avoid the uncertainty of possible future changes to the regulations." *Id.* at 61,467. As evidence of the "potentially serious environmental repercussions" of such preemptive actions, the Commission cited *Transcontinental Gas Pipe Line Corp.*, 48 FERC ¶ 61,132 and 48 FERC ¶ 61,189 (1989). *Order Denying Requests*, 53

FERC at 61,467 & n. 9. Finally, the agency noted that waivers of the rule were possible and that it had already granted many such waivers, including two to Tennessee. *Id.* at 61,468 & n. 12.

In response, Tennessee filed the instant petition for review.

## II. ANALYSIS

■ Section 553 of the Administrative Procedure Act requires agencies to provide notice of a rule thirty days before it becomes effective and to give the public an opportunity to comment on it. *See* 5 U.S.C. § 553(b)-(d) (1988). An exception exists, however, for cases

> when the agency for good cause finds ... that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

*Id.* § 553(b)(3)(B). Despite the broad nature of this language, our cases make clear that the good cause exception is to be "narrowly construed and only reluctantly countenanced." *State of New Jersey v. EPA*, 626 F.2d 1038, 1045 (D.C.Cir.1980). It is "*not* [an] escape clause[ ] that may be arbitrarily utilized at the agency's whim." *American Fed'n of Gov't Employees v. Block*, 655 F.2d 1153, 1156 (D.C.Cir.1981) ("*AFGE*") (internal quotation marks omitted). "Rather, use of the[ ] exception[ ] by administrative agencies should be limited to emergency situations; furthermore, the grounds justifying the agency's use of the exception should be incorporated within the published rule." *Id.* (citation omitted).

■ The Commission offers two justifications for invoking the exception: (1) the interim nature of the rule; and (2) the fear of damage to the environment that might result from a rush to avoid the mandates of a final rule. We have held that "[t]he interim status of the challenged rule is a significant factor" in the good cause analysis. *Mid-Tex Elec. Coop., Inc. v. FERC*, 822 F.2d 1123, 1132 (D.C.Cir.1987). We have also indicated that the less expansive the interim rule, the less the need for public comment. *See AFGE*, 655 F.2d at 1156.

■ The interim rule, as clarified, amounts to little more than a request for advance notice. The interim rule does not purport to implement any previously unused authority to police pipeline companies based on the notifications. Moreover, the Commission has indicated that compliance requires only a few hours. And while Tennessee complains that it cannot tell "what repairs will be needed, the lengths of lines that will need replacement, or the cost of such replacements until *after* the contractor has ... tested the line in the field," Brief for Petitioner at 12, the Commission's clarification of the rule indicates that in such circumstances, the agency will allow pipelines to simply list the facilities it intends to inspect and provide a good faith estimate of the repairs that might be necessary. The rule does not prevent the immediate replacement of pipeline facilities for safety reasons, and it provides for waivers where the requirements are unduly burdensome.

Nevertheless, our cases instruct that "the limited nature of the rule cannot in itself justify a failure to follow notice and comment procedures." *Council of S. Mountains, Inc. v. Donovan*, 653 F.2d 573, 582 (D.C.Cir.1981); *see also AFGE*, 655 F.2d at 1158 (citing cases holding "even interim regulations invalid without public procedures"). Were the opposite true, agencies could issue interim rules of limited effect for any plausible reason, irrespective of the degree of urgency. Should this be allowed, the good cause exception would soon swallow the notice and comment rule.

■ Therefore, we turn to the Commission's contention that the interim rule is needed to prevent the environmental damage that might result from a speedup in construction and replacement as pipeline companies seek to avoid the unknown burdens of a final rule. At bottom, this justification rests on the regulator's prediction of the regulateds' reaction to a proposed rulemaking. This justification entails a degree of speculation by the agency. We are hesitant to discount such forecasts, as they "necessarily involve deductions based on expert knowledge of the Agency." *Mobil Oil Corp. v. Dep't of Energy*, 728 F.2d 1477, 1492 (Temp.Emer.Ct.App.1983), *cert. denied*, 467 U.S. 1225, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984) (internal quotation marks omitted). Nevertheless, at a minimum, an agency must indicate the basis for its prediction so that the reviewing court may be in a position to determine whether it acted reasonably. In all cases, a court must "satisfy itself that the agency explains the facts and policy concerns it relies on and that, given these, a reasonable person could have made the judgment the agency did." *Id.* (citing cases).

Here, the Commission has provided little factual basis for its belief that pipelines will seek to avoid its future rule by rushing new construction and replacements with attendant damage to the environment. Section 2.55(b) has been in effect for some forty years; section 284.3(c) for about thirteen. Yet the agency has cited only one case, *Transcontinental*, 48 FERC ¶ 61,189, in which a pipeline company operating under either of those sections has been found to have harmed the environment. In that case, which involved new construction pursuant to section 284.3(c), the Commission imposed a $37 million civil penalty against the company for damage to archaeological sites in violation of the National Historic Preservation Act. It goes without saying that evidence of harm resulting from the past construction of a new pipeline provides no support for the rule's requirement of advance notification of replacement work performed pursuant to section 2.55(b). Moreover, evidence of a single violation in the case of new construction, while not insubstantial, is a thin reed on which to base a waiver of the APA's important notice and comment requirements.

The Commission's counsel maintained, at oral argument, that the agency has had ample practical experience on which to support its claim that the absence of oversight over section 284.3(c) and 2.55(b) projects had resulted in avoidable damage to the environment and thus would predictably do so in the future. That may well be the case, but that does not excuse the Commission's failure to cite such examples in support of its claim of a good cause exception

from the APA's notice and comment requirements. *See Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) ("agency must examine the relevant data and articulate a satisfactory explanation for its action").

It is true, as the Commission points out, that courts have allowed use of the good cause exception based on bare predictions of regulatory avoidance. Thus, in *Mobil Oil*, the court stated:

> On a number of occasions [ ] this court has held that, *in special circumstances,* good cause can exist when the very announcement of a proposed rule itself can be expected to precipitate activity by affected parties that would harm the public welfare.

*Mobil Oil*, 728 F.2d at 1492 (emphasis added). *Mobil Oil* involved a regulation issued by the Federal Energy Administration ("FEA"), the predecessor of the Department of Energy, to equalize prices charged to different classes of customers by oil refiners during the energy crisis of the early 1970's. The FEA claimed that advance notice of the regulation would lead to regulatory avoidance by way of long-term contracts; thus the FEA issued the rule without notice and comment. *Id.* at 1491. The court found that the agency decisions under review

> were, in large measure, of a judgmental or predictive nature. Whether ... refiners were likely to engage in discriminatory pricing if informed of the impending rule change, [is] not strictly [a] factual question[ ]; [it] involve[s] subjective judgments.

*Id.* at 1492. The court concluded that such judgments necessarily involved deductions based on the agency's expert knowledge; and it found that the FEA had provided a sufficient explanation of "the facts and policy concerns it relie[d] on and that, given these, a reasonable person could have made the judgment the agency did." *Id.* The court therefore upheld its invocation of the good cause exception. *Id.* at 1492–94.

*Mobil Oil,* however, dealt with special circumstances that set it apart from this case. It is well recognized that prices can be changed rapidly to accommodate shifts in regulatory policy. Thus, it is not surprising that the *Mobil Oil* court upheld the agency's determination that the success of its price control regulation depended on its being given immediate effect. Construction and replacement projects, by contrast, are planned well in advance and take time to accomplish. Moreover, if the agency has, as counsel claims, a wealth of practical experience on which to draw in order to justify its action, then it was not forced to rely on the "self-evident" need for the interim rule.

FERC's experience with this interim rule underscores the value of public participation in rulemaking. As industry comments have made clear, a scrupulous compliance with the rule could have resulted in costly interruptions in pipeline replacement operations. The clarifications the Commission has had to issue in order to make the rule workable illustrate the wisdom of the APA's requirement that an agency have the benefit of informed comment before it issues regulations that have the force of law. The Commission has failed to demonstrate sufficient cause for setting aside these important safeguards.

### III. Conclusion

FERC has claimed good cause without offering any evidence, beyond its asserted expertise, as to why the public interest is served by the immediate implementation of the interim rule. Accordingly, the petition is granted and the interim rule vacated.

*So ordered.*