**ANALYSAS CORP., Plaintiff,**

v.

**Erskine BOWLES,[1] et al., Defendants.**

**Civ. A. No. 93–0711 (RCL).**

United States District Court, District of Columbia.

June 23, 1993.

---

**1.** Erskine Bowles was substituted for Dayton    Watkins as defendant on June 14, 1993.

Stephen C. Leckar, Paralee White, Andrew Tenenbaum, Cohen & White, Washington, DC, for plaintiff.

W. Mark Nebeker, Asst. U.S. Atty., Washington, DC, for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court on plaintiff's motion for a preliminary injunction and both parties' cross-motions for summary judgment. Upon consideration of the parties' memoranda, and for the reasons stated below, plaintiff's motion for summary judgment will be granted; defendants' motion for summary judgment will be, denied. A permanent injunction will be entered; thus, plaintiff's motion for a preliminary injunction will be denied as moot.

## I. INTRODUCTION.

Pursuant to the Small Business Act, Congress has authorized the Small Business Administration ("SBA") to determine which business enterprises are to be designated small business concerns within particular industries. SBA establishes a ceiling (typically a dollar figure representing a firm's average annual receipts ("AAR")) for defined industries each of which is referenced by a four-digit Standard Industrial Classification ("SIC") code; firms must fall below the industry's ceiling in order to qualify as small businesses for that particular SIC code. When government contracts are proffered to small businesses under the Section 8(a) program, the contracts are labeled with a given SIC code, thus authorizing all firms which have previously qualified for that code to compete.[2]

If SBA determines that no size standard for a particular industry has been established, SBA regulations provide that SBA may issue a temporary size standard for that industry. 13 C.F.R. § 121.301(c). It is just such a standard that plaintiff here challenges.

Plaintiff is a woman-owned firm which provides technical services, including environmental consulting, to federal agencies. On January 13, 1993, the Small Business Administration promulgated an "Interim Final Rule"[3] regarding Small Business Size Stan-

---

2. In addition, under the Small Disadvantaged Business Set–Aside Program, firms which have not qualified for a particular SIC code may nonetheless compete for the contract as long as their size falls below the SIC code's AAR ceiling.

3. In the court's view, the term "Interim Final Rule" tends to the oxymoronic; the court also notes that the term differs from the one used in the regulation (13 C.F.R. § 121.301(c) speaks of an "interim *emergency* rule"). The difference is telling, as the circumstances in this case do not justify emergency treatment. SBA never explains the discrepancy between the terms.

In addition, it is unclear whether the phrase "interim final rule" means that SBA has issued a *final rule* which only applies temporarily (i.e., in the *interim* ), or that SBA has agreed upon a *final version* of an *interim rule* (even though this structure violates standard rules of construction in the English language, that adjectives precede the nouns that they modify). Defendants' counsel assumes that the latter is true, but SBA provides no authoritative guidance.

dards for Environmental Services, citing 13 C.F.R. § 121.301(c) as justification for not using standard notice and comment procedures. Prior to January 13, no single SIC code encompassed what defendants have termed an "emerging industry," the environmental assessment and reclamation of federal facilities. As a result of this new classification, plaintiff is now foreclosed from bidding on various government contracts for which it qualified previously, in particular solicitation DE–RP05–930R22081.

Thus, plaintiff seeks a declaratory judgment that SBA's interim final rule was contrary to law; as well as an injunction enjoining defendants from taking any action on solicitation DE–RP05–930R22081 until it is resolicited using lawfully promulgated size standards.[4]

## II. ANALYSIS.[5]

### A. The Administrative Procedure Act Applies to SBA.

■ This case requires that the court interpret and apply two regulations adopted by SBA. In the first regulation, SBA specifically adopts the requirements of the Administrative Procedure Act ("APA"):

> SBA is governed as a matter of policy by the public participation provisions of the Administrative Procedure Act, 5 U.S.C. 553, notwithstanding the exemptions given by such section 553 for matters relating to agency management or personnel, or to public property, loans, grants, benefits, or contracts. Where, as provided by 5 U.S.C. 553, it is determined that such public participation procedures would be impracticable, unnecessary, or contrary to the public interest, a specific finding to this effect

shall be published with the rules or regulations in question. *Such exceptions from public participation procedures are not to be favored and will be used sparingly, as for example, in emergencies....*

13 C.F.R. § 101.9 (emphasis added).

In the second regulation, SBA delimits an example of what may constitute an "emergency:"

> If no size standard for an industry has been established in the Part, then SBA, upon request, may issue a temporary size standard for the industry in question by publishing an interim emergency rule in the *Federal Register* with an opportunity for public comment *in accordance with the Administrative Procedure Act,* 5 U.S.C. 553 (1976).

13 C.F.R. § 121.301(c) (emphasis added).

Both provisions explicitly adopt the APA. In fact, the "impracticable, unnecessary, or contrary to the public interest" language in § 101.9 is taken verbatim from the APA, 5 U.S.C. § 553(b)(3)(B). And, § 121.301(c) specifically adopts that same statutory exemption from standard notice and comment procedures. Therefore, even though SBA is statutorily exempted from the APA's requirements, the APA's strictures nonetheless apply to SBA because SBA has imposed them upon itself. Moreover, as SBA has adopted not only the principles of the APA but also the exact wording of the statute, the court decisions applying the APA apply equally to SBA. And, since an agency may not act contrary to its own regulations, once SBA adopts the APA, it cannot claim that the APA's dictates do not apply to it.[6]

---

**4.** Defendants have not contested plaintiff's standing to bring this action. The court finds that it has jurisdiction over the matter, 28 U.S.C. § 1331; that venue is proper, 28 U.S.C. § 1391(b); and that plaintiff has standing to bring this suit. *See Wheelabrator Corp. v. Chafee,* 455 F.2d 1306 (D.C.Cir.1971).

**5.** This case is properly before the court on summary judgment. At issue are not facts; there are no genuine issues as to any material fact that would prevent an entry of summary judgment for either side. *See* Fed.R.Civ.P. 56(e). At issues is a question of law: Under what circumstances

may SBA forego normal procedures—notice and comment—and issue interim emergency rules?

**6.** Defendants cite *Alcaraz v. Block,* 746 F.2d 593, 612 (9th Cir.1984) for the proposition that an agency's interpretation of its self-adopted notice and comment provisions are deserving of greater latitude from a reviewing court. SBA's regulations specifically and explicitly adopt the APA's notice and comment rules, however, and leave no room for the interpretation defendants' counsel now urge upon this court.

B. *SBA Violated the APA and its own Regulations.*

▪ Having determined that the APA applies to SBA, the court must determine whether SBA has complied with the terms of the APA regarding rule-making. SBA's regulations properly note that "exceptions from public participation procedures are not to be favored and will be used sparingly." 13 C.F.R. § 101.9. That standard alone, however, does not govern SBA's actions since SBA has specifically adopted the APA's more specific and more stringent standard.

Courts in this circuit take a dim view of rule-making which has not been preceded by notice and comment. For instance, in *Mid–Tex Elec. Co-op v. F.E.R.C.*, 822 F.2d 1123 (D.C.Cir.1987), the Court of Appeals held that F.E.R.C.'s interim rule met the "good cause" standard. However, in that case, F.E.R.C.'s rule was 1) specifically in response to a Court of Appeals decision throwing out the prior rule; 2) largely already approved by the Court of Appeals; 3) based on a significant amount of preceding notice and comment; 4) of short duration, as F.E.R.C. demonstrated that they were quickly moving to promulgate a permanent rule; and 5) demonstrated to be necessary in the specific fact circumstance presented. 822 F.2d at 1132–33. The court noted that none of these conditions, standing alone, would satisfy the good cause standard; only when taken together was their collective weight sufficient to sway the court. 822 F.2d at 1133. And, even though all these factors were present, the court noted not only that the exception was narrow but also that the inquiry as to whether the rule should stand still was "a close one." 822 F.2d at 1132.[7]

The differences between this case and *Mid–Tex*, in which an interim rule was upheld, are glaring. *First*, this rule is not in response to any judicial, legislative, or executive mandate, but merely at the behest of SBA itself. *Second*, there has been no ratifi-cation of the rule by any entity other than SBA, including none from a federal court. *Third*, there has been no advance notice and comment on this rule; in fact, the *Federal Register* publication requests *subsequent* public input. SBA's only basis for the interim rule is SBA's internal work and a handful of outside letters. In short, rather than including the public, the public has been excluded from the rule-making process. *Fourth*, SBA has given no indication that a final rule is imminent. Although there is also no indication that SBA is being dilatory in formulating the final rule, affirmative evidence that SBA is moving quickly would tend to make the absence of notice and comment less significant.

*Finally*, SBA has not demonstrated that the circumstances justify the use of emergency procedures. In the *Federal Register* notice of the Interim Final Rule, SBA included minimal justification as to why it was foregoing notice and comment. 58 Fed.Reg. 4074–75 (Jan. 13, 1993). SBA mentions that environmental services is an "emerging industry" and that the reason behind a new size standard "is to clarify the present uncertainty among contracting officers in determining the SIC classification of contracts involving environmental services." *Id.* at 4074. Then, SBA justifies its action under 13 C.F.R. § 121.301(c) as follows:

> SBA believes this action is in the public interest in response to the confusion experienced by contracting activities over the industry classification of environmental services and the resulting size standard. Furthermore, Federal contracting is beginning to expand with multi-year contracts ranging in sizes from $25.0 million to $100 million.

*Id.* at 4075.

In short, the court finds that SBA has not manifested why the minimal delay necessary in establishing a rule properly supported by

---

**7.** Since *Mid–Tex*, the Court of Appeals has demonstrated just how narrow and limited the good cause exception is. Most recently, in *Tennessee Gas Pipeline Co. v. F.E.R.C.*, 969 F.2d 1141 (D.C.Cir.1992), the court vacated an interim rule when it was unable to "satisfy itself that the agency explains the facts and policy concerns it relies on and that, given these, a reasonable person could have made the judgment the agency did." 969 F.2d at 1145 (citation omitted). Even though the rule was temporary, the court vacated the rule since F.E.R.C. failed to demonstrate sufficient cause to forego notice and comment.

notice and comment (as both SBA regulations and the APA require) would work to the detriment of small businesses. There is no claim that contractors will be able to circumvent the strictures of the final rule during the notice and comment period (a typical justification for emergency procedures); nor has SBA shown that significant harm will befall the public in the absence of this rule.

As emergency procedures are to be used only in rare cases, SBA has an obligation to avoid using them when practicable and possible. Similarly, SBA has an obligation to demonstrate that it has ascertained all the information necessary to make a reasoned determination regarding whether emergency rule-making is warranted. In this case, SBA failed to fulfill these obligations. For instance, SBA did not determine what contracts were likely to be lost to small businesses absent an emergency definition. Nor did SBA question the Air Force (the only relevant governmental agency as far as the Administrative Record is concerned) as to whether award of these contracts could be delayed during rule-making. SBA also gives no information as to whether expedited rule-making (after appropriate notice and comment) would alleviate the alleged (but never-demonstrated) harms. Without data like this, it is impossible for the court to affirm SBA's deviation from standard practices.

As for the Administrative Record, SBA relies upon a handful of letters it received in the spring and summer of 1992, each of which, SBA claims, demonstrates that immediate action was necessary. Of course, these letters need not specifically request that SBA take emergency action pursuant to 13 C.F.R. § 121.301(c) in order to be supportive of SBA. However, all but one of these letters clearly contemplates that SBA will use standard notice and comment procedures. None of these letters either requests or anticipates emergency action; nor do they claim any harm will result if emergency action is not taken. Only one letter, from the Chief of the Small & Disadvantaged Business Utilization Office at Tinker Air Force Base, Administrative Record at 61–63, suggests that more immediate action might be appropriate, yet even his letter fails to acknowledge the possibility of—or the imminent need for—emergency action on the part of SBA. In short, both the published notice of the interim rule and the administrative record clearly demonstrate that the facts of this case, unlike those in *Mid–Tex* and the cases cited therein, do not support emergency action.[8]

In conclusion, as in *Mid–Tex*, none of the factors taken alone necessarily demonstrates that emergency action was not justified. However, their combined weight is overwhelming. Although there might have been some unspecified harm to the public if notice and comment procedures were followed, there is no indication (even when the facts are read in the light most favorable to defendants) that the public interest justified foregoing the clear mandate of SBA regulations and the APA.[9]

---

**8.** Plaintiff has created a chart of several of the factual circumstances which typically support a court's determination that notice and comment procedures are contrary to the public interest. They include the following:
- *Adverse Judicial Decision Requiring Rules:*
  — *American Fed'n of Gov't Employees v. Block*, 655 F.2d 1153 (D.C.Cir.1981);
  — *Mid–Tex Elec. Co-op. v. F.E.R.C.*, 822 F.2d 1123 (D.C.Cir.1987).
- *Statutory Constraints:*
  — *American Transfer & Storage Co. v. ICC*, 719 F.2d 1283 (5th Cir.1983);
  — *Petry v. Block*, 737 F.2d 1193 (D.C.Cir.1984).
- *Unanticipated Economic Events:*
  — *Nader v. Sawhill*, 514 F.2d 1064 (T.E.C.A.1975);
  — *DeRieux v. Five Smiths, Inc.*, 499 F.2d 1321 (T.E.C.A.1974).
- *Foreign Policy Crisis:*

— *Malek–Marzban v. INS*, 653 F.2d 113 (4th Cir.1981).
- *Public Services:*
  — *Nat'l Fed'n of Fed. Employees v. Devine*, 671 F.2d 607 (D.C.Cir.1982);
  — *Crawford v. Metropolitan Dev. and Housing Agency*, 415 F.Supp. 41 (M.D.Tenn.1976);
  — *Airport Operators Council Int'l v. Shaffer*, 354 F.Supp. 79 (D.D.C.1973);
  — *Northwest Airlines v. Goldschmidt*, 645 F.2d 1309 (8th Cir.1981).

None of the conditions which supported these deviations from notice and comment rule-making is extant here.

**9.** Plaintiff contends that SBA had a mindset to "go emergency" as early as May 1992. As the court finds that the facts were insufficient to go emergency when SBA actually acted, in the fall of 1992, the court need not address plaintiff's allegation.

The court finds, therefore, that SBA's rule is arbitrary and capricious and contrary to law (as expressed *both* in the APA and in SBA's own regulations). The size standard, promulgated January 13, 1993, therefore, must be vacated.

#### C. *SBA's Defenses.*

SBA raises two other defenses not addressed in the above discussion. Each purports to justify SBA's action. Neither, however, does so.

■ *First,* SBA claims that its rule is merely an interim rule, and therefore notice and comment are not as necessary. As mentioned above, however, SBA has given no indication that it is moving quickly to finalize the rule; nor has it suggested that it will have a final rule in place by any date in the near future.

SBA's argument as to this point is further undercut by another of SBA's positions, that the "emerging industry" of environmental services is so important that it mandated immediate, emergency action. It is true that the Court of Appeals has stated that "the less expansive the rule, the less the need for public comment." *Tennessee Gas,* 969 F.2d at 1144 (citing *American Fed'n of Gov't Employees v. Block,* 655 F.2d 1153, 1156 (D.C.Cir.1981)). When stated in the inverse, the *more* important the rule (and SBA claims that, given the nature of this market, this rule *is* important), the *more* the need for public participation in its formulation.

■ *Second,* SBA has posited that it has issued emergency size standards on at least six other instances. The fact that SBA may have acted contrary to law in the past does not allow it to do so here. The court need not address whether the interim size standards promulgated on those occasions were proper; they are not before the court. What is before the court is the propriety of the present interim rule; the court determines that it, indeed, is contrary to law.

### III. CONCLUSION.

The court finds that plaintiff's opportunity to bid on solicitation DE–RPO5–930R22081 has been forestalled by defendants' illegal activities. The court finds that it is in the public interest to ensure that public notice and comment take place prior to SBA's promulgation of a size standard for the Environmental Services Industry. Moreover, the equities demand that the court grant plaintiff the relief it seeks. Therefore, defendants are enjoined from taking any action on this solicitation until it is re-solicited using properly promulgated SIC codes.

### ORDER

This case comes before the court on plaintiff's motion for a preliminary injunction and both parties' cross-motions for summary judgment. Upon consideration of the parties' memoranda, and for the reasons stated in the accompanying memorandum opinion, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is GRANTED.

2. Defendants' motion for summary judgment is DENIED.

3. Plaintiff's motion for a preliminary injunction is DENIED AS MOOT.

4. A PERMANENT INJUNCTION is entered as follows: Defendants shall take no action on solicitation DE–RPO5–930R22081, which refers to and/or incorporates the Environmental Services size standard improperly promulgated by SBA on January 13, 1993, 58 Fed.Reg. 4074, until it is re-solicited using properly promulgated SIC codes.

SO ORDERED.