**THRIFT DEPOSITORS OF AMERICA, INC., Plaintiff,**

v.

**OFFICE OF THRIFT SUPERVISION, Defendant.**

**Civ. A. No. 94–1008 (CRR).**

United States District Court, District of Columbia.

Sept. 29, 1994.

Michael S. Helfer, Murray A. Indick, and Satish M. Kini of Wilmer, Cutler & Pickering, Washington, DC, David M. Perlmutter of David M. Perlmutter & Associates, New York City, for plaintiff.

Carolyn B. Lieberman, Acting Chief Counsel, Thomas J. Segal, Deputy Chief Counsel, Aaron B. Kahn, Asst. Chief Counsel, and Kerry Kircher, Sr. Trial Atty., of Office of Thrift Supervision, Washington, DC, for defendant.

### MEMORANDUM OPINION OF CHARLES R. RICHEY UNITED STATES DISTRICT JUDGE

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Plaintiff Thrift Depositors of America ("TDA") is a trade association of mutual sav-

ings association depositors which filed suit on May 6, 1994, against Defendant Office of Thrift Supervision ("OTS"). TDA alleges that the OTS' implementation of an interim final rule governing mutual-to-stock conversions of savings associations without a notice and comment period violates Section 553 of the Administrative Procedure Act. Specifically, TDA challenges the provision of the rules that grants a purchase preference [1] to account holders residing within 100 miles of an association, or within the local community.

Before the Court are Cross–Motions for Summary Judgment. In light of the papers filed by the parties, the underlying law, and the record herein, the Court shall grant Plaintiff's Motion for Summary Judgment. After a careful analysis of the foregoing, the Court holds that the Interim Final Rule granting a purchase preference to "local" depositors is void.

## BACKGROUND

On May 6, 1994, TDA filed a complaint with the Court seeking declaratory and injunctive relief. Three days later, TDA moved for a Preliminary Injunction to prevent the OTS from approving any pending conversion applications pursuant to the Interim Final Rule. At a May 12, 1994, status conference the Court dismissed TDA's action without prejudice based upon the parties' representations that the pending conversion applicants had, or will, seek a waiver of the local depositor preference. For six weeks subsequent to the Court's Order, the OTS waived the application of the local depositor preference. However, the OTS, in a reversal of its previous policy, has ceased to grant waivers of the preference except on a case-by-case. Consequently, TDA reopened this lawsuit on July 7, 1994.

## FACTS

The facts material to this action are not in dispute.[2] On May 3, 1994, the OTS simulta-

neously published proposed changes to its mutual-to-stock conversion[3] regulations for savings associations and adopted the proposed changes as an Interim Final Rule. The Interim Final Rule applies to conversions that are "pending or filed on or after May 3, 1994." 59 Fed.Reg. at 22,725 (1994). Prior to the adoption of the Interim Final Rule, the OTS had received general comments regarding broad issues surrounding mutual-to-stock conversions. Nevertheless, the actual Interim Final Rule was issued without prior notice and opportunity for comment in reliance on the "good cause" exception of the Administrative Procedure Act.

The Interim Final Rule gives priority stock subscription rights for converting mutual savings associations to "local" depositors whenever a conversion stock offering oversubscribes. A local depositor is one who "reside[s] in the association's 'local community' or within 100 miles of a home or branch office of the converting association." 59 Fed. Reg. 22,728 (1994). Non-local depositors are not guaranteed the right to participate in the conversion process. Although the OTS has previously allowed converting associations to rank stock purchases based upon geography in certain circumstances, the Interim Final Rule's preference is the first time within the past twenty years that the OTS has required a geographic preference for "local" depositors. The Interim Final Rule permits the OTS to "grant on a case by case basis, a waiver in writing from any provision in the interim final rule for good cause shown." 59 Fed.Reg. at 22,732 (1994).

Subsequent to issuing the Interim Final Rule, the OTS has approved at least eighteen mutual-to-stock conversion applications and waived the local depositor preference. Yet on June 30, 1994, and May 9, 1994, respectively, the OTS approved the conversion applications of Jefferson Federal Mutual Hold-

---

**1.** The Plaintiff labels the provision at issue a "geographic discrimination." In the interests of justice, the Court shall refer to the provision as a "preference."

**2.** Pursuant to Local Rule 108(h) of this Court, both parties have filed Statements of Material Facts which are not in dispute.

**3.** A mutual-to-stock conversion of a savings association is a process whereby depositors are permitted to buy stock that is issued from an association that converts from the mutual to stock form of ownership. *See* 59 Fed.Reg. 7,194 (1994).

ing Company and Flushing Savings Bank but denied their requests for a waiver of the local depositor preference. Further, the OTS has since denied waiver requests for several more converting associations. TDA members have accounts with many of the converting associations and have at least one member whom is not considered a local depositor in many of those converting associations. In the event that non-local depositors incur higher costs in purchasing stock as a consequence of the "local" depositor preference, the increased costs are not recoverable from the OTS. Several of the applications for conversion, which were approved without a waiver of the geographic preference, are expected to expire in September, 1994.

### DISCUSSION

■ Summary judgement shall be rendered upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1032 (D.C.Cir.1988).

### I. SINCE TDA IS CHALLENGING THE OTS' ISSUANCE OF THE INTERIM FINAL RULE AND TDA MEMBERS HAVE BEEN AFFECTED, THIS COURT HAS JURISDICTION TO HEAR THE CASE.

The Defendants have raised two objection to jurisdiction. First, they claim that this court does not have subject-matter jurisdiction and, second, that the "case or controversy" requirement of Article III has not been met.

■ In its argument, the OTS initially claims that this Court lacks subject-matter jurisdiction because Congress specifically vested the Courts of Appeals with exclusive jurisdiction in challenges to the Director of the OTS' approval of mutual-to-stock conversions. (Def.'s Mot. to Dismiss or for Summ.J. at 20.) According to the OTS, since TDA members are only harmed if the Di-

rector has approved a particular mutual-to-stock conversion with the local depositor preference, TDA is really challenging specific transactions and not the interim rule itself. *Id.* at 20–21.

The Court finds that it has jurisdiction to hear the case because TDA has challenged the rule-making procedure, and because the Interim Final Rule was passed without complying with notice and comment procedures.

### A. TDA's Challenge To The Issuance Of An Interim Final Rule Without Prior Notice And An Opportunity For Comment Vests This Court With Jurisdiction.

■ In determining Jurisdiction, Courts traditionally apply the "well-pleaded complaint rule." *see Franchise Tax Bd. of the State of California v. Construction Laborers Vacation Trust for So. California,* 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983); *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Commercial Union Ins. Co. v. United States,* 999 F.2d 581, 584–85 (D.C.Cir. 1993). According to the rule, the Court is to examine the Plaintiff's well-pleaded complaint to determine if the Court has jurisdiction. *Id.* In examining the complaint, the Court is mindful of the rule that "the party who brings suit is master to decide what law he will rely upon." *Bell v. Hood,* 327 U.S. 678, 681, 66 S.Ct. 773, 775, 90 L.Ed. 939 (1946); *see Harper v. McDonald,* 679 F.2d 955, 956–58 (D.C.Cir.1982) (per curiam).

In contesting jurisdiction, the OTS has twisted the Plaintiff's complaint. Ignoring the plain language of the complaint, the OTS asserts that TDA is only contesting specific transactions. If the OTS' assertions were true, it follows that the Court of Appeals, by statute, is vested with exclusive jurisdiction to hear the dispute. 12 U.S.C. § 1464(i)(2)(B), (j) .(1989).

Yet a simple reading of the complaint reveals the fallacy of the OTS' argument. In its Complaint, TDA states that "[t]he OTS adopted the Interim Final Priority Regulations without prior notice and public comment and without "good cause" for dispens-

ing with the notice and comment procedures, as required under the APA." (Compl. for Declaratory and Prelim.Inj.Relief ¶ 15.) Furthermore, Plaintiff's requested relief is for a declaration that the "Interim Final Priority Regulations" are void. *Id.* No where in Plaintiff's complaint are there challenges to specific transactions as suggested by the Defendant.

■■■ Since Plaintiff challenges the adoption of the regulations rather than a specific transaction, the Court looks to the general provisions of the Home Owners Loan Act in determining jurisdiction. According to the Home Owners Loan Act, the OTS is authorized to adopt regulations affecting savings association. 12 U.S.C. § 1464(d)(3). These general provisions do not require judicial review in any particular judicial forum. Therefore, since the Districts Courts have the power to review procedural challenges under the APA, *see* 5 U.S.C. § 702 (1970); 28 U.S.C. § 1331; *Robbins v. Reagan,* 780 F.2d 37, 43 (D.C.Cir.1985), review in this Court is appropriate.

### B. *THE OTS' Failure To Provide For Notice And An Opportunity For Public Comment Is A "Case or Controversy."*

According to the OTS, the peculiar nature of the harm involved here shows that no case or controversy is present for the Court to adjudicate.[4] (Def.'s Mot. to Dismiss or for Summ.J. at 20–23.)

The OTS' argument fails for two reasons. First, the OTS' argument is founded on the faulty premise that TDA is challenging a specific transaction, instead of rule-making procedures. As indicated *supra,* TDA's complaint challenges the rule-making procedures; not specific conversions as argued by the OTS.

Second, TDA's members are harmed by the passage of the Interim Final Rule without notice and comment. Under Article III

of the Constitution, district courts may only hear actual cases or controversies. This Circuit has previously held that a challenge to an agency's promulgation of an interim final rule without notice and comment is a case or controversy. *see e.g. Tennessee Gas Pipeline Co. v. Federal Energy Regulatory Comm'n,* 969 F.2d 1141 (D.C.Cir.1992).

Clearly in this case there is a case or controversy. The Interim Final Rule mandates the use of a local depositor preference whenever an association oversubscribes. TDA has several members who are not "local" depositors, as defined by the statute. Consequently, TDA members have been affected by the passage of the Interim Final Rule. Therefore, there is a live case or controversy for the Court to hear.

### II. *THE OTS' PASSAGE OF AN INTERIM FINAL RULE WITHOUT PRIOR NOTICE AND AN OPPORTUNITY FOR COMMENT WITHOUT "GOOD CAUSE" VIOLATES THE ADMINISTRATIVE PROCEDURE ACT.*

■■ Section 553 of the Administrative Procedure Act ("APA") prescribes the general notice and comment procedures an agency must follow in promulgating a rule. Under the APA, an agency must publish notice of a proposed rule in the Federal Register and allow interested parties to submit comments on the proposed rule. 5 U.S.C. § 553 (1970). The APA does, however, recognize an exception to these procedures. An agency may suspend general notice and comment procedures if the agency "for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B) (1970).

The OTS claims that it has satisfied the "good cause" standard. However, the Court is unpersuaded by the OTS' argument for

---

**4.** OTS has also argued that the Court acknowledged in its May 13, 1994 Order that no case or controversy exists unless or until a specific transaction harms TDA. (Def.'s Mot. to Dismiss or for Summ.J. at 21.) The Court notes its disdain over such a distortion of the Court's Order. That

Order indicated that no case or controversy existed for the sole reason that, at that time, all the applicants for conversion had, or would seek a waiver of the disputed Interim Final Rule. Since not all applicants are now seeking such a waiver, that statement by the Court does not apply.

three reasons. First, the OTS has argued incorrectly that the "good cause" standard is met if the entire rule is justified. Second, the facts cited by the OTS are not the equivalent of an emergency situation. Last, the combined weight of those facts also do not amount to an emergency situation. Therefore, the Court holds that the OTS has failed to satisfy the "good cause" standard.

### A. The "Good Cause" Standard Is Not Met Merely By Showing A Justification For The Entire Rule Rather Than The Specific Provision That Has Been Challenged By TDA.

■ Relying on *American Fed'n of Gov't Employees v. Block*, 655 F.2d 1153 (D.C.Cir. 1981), the OTS asserts that the good cause standard is satisfied "if there is a justification for the rule as *a whole*, and the various provisions of the rule are rationally related to the justification." (Def.'s Mot. to Dismiss or For Summ.J. at 24.) (emphasis added). In that case, the court held that the Department of Agriculture had good cause to issue rules without public notice and comment. *Id.* at 1154.

Nevertheless, *American Federation* is factually inapposite to the instant situation. First, the court in that case found that the agency issued the regulations in response to a court order. *Id.* at 1157. Clearly there has been no such order in this case. Second, the *American Federation* plaintiffs challenged the entire rules, *Id.* at 1155,; not a specific section. Nothing in the case suggested that a Plaintiff is foreclosed from challenging a particular provision of a rule. More importantly, the OTS has misinterpreted *American Federation*.

The OTS has relied upon a footnote to conclude that the "good cause" standard is satisfied only when the entire rule is scrutinized. (Def.'s Mot. to Dismiss or for Summ.J. at 23.) However, that footnote expressed the court's competing concerns in deciding whether good cause existed with respect to the challenged rule, rather than a standard to apply in deciding the "good cause" issue. *American Federation*, 655 F.2d at 1157 n. 7. Given the context of footnote seven, it does not, as the OTS sug-

gests, imply that the good cause standard is to be analyzed with respect to the entire rule. Therefore, the OTS is incorrect in stating that the good cause standard is met if there is a justification for the rule as a whole.

### B. None Of The Factors Cited By The OTS Constitute An Emergency Situation That Would Justify The Avoidance Of The APA's Notice And Comment Procedures.

■ In referring to the "good cause" exceptions to the notice and comment procedures, this Circuit has stated that these exceptions "will be narrowly construed and only reluctantly countenanced." *E.g. State of New Jersey, Dep't of Envtl. Protection v. EPA*, 626 F.2d 1038, 1045 (D.C.Cir.1980) (citations omitted). In fact, this Circuit has emphasized that the exceptions are "not 'escape clauses' that may be arbitrarily utilized at the agency's whim." *American Federation*, 655 F.2d at 1156 (citing S.Rep. No. 752, 79th Cong., 1st Sess. (1945), *reprinted in* Administrative Procedure Act, Legislative History, 79th Cong. 1944–46 at 200–01.) Consequently, the use of the "good cause" exception is limited to emergency situations.

The inquiry as to whether an emergency situation exists is necessarily "fact- or context-dependent." *Mid–Tex Elec. Coop., Inc. v. FERC*, 822 F.2d 1123, 1132 (D.C.Cir.1987). Consequently, the Court will examine the various factors present in this case to determine if the good cause standard has been met.

### 1. Solicitation Of Public Comment On A Rule That Does Not Deal With The Local Depositor Preference Does Not Satisfy The Notice And Comment Requirements Of The APA.

■ In its Motion to Dismiss or for Summary Judgement, the OTS implies that it already had the benefit of public input on the rule at issue in this case. (Def.'s Mot. to Dismiss or for Summ.J. at 25.) According to the OTS, the public comments it solicited and received in response to a rule dealing with mutual-to-stock conversions were utilized by the OTS in its promulgation of the Interim

Final Rule at issue in this case. *Id.* at 25. Consequently, the OTS argues that it had the benefit of public comment on the Interim Final Rule.

The Court is puzzled by this line of the OTS' argument. Indeed, the rule referred to by the OTS discussed the problems of insider abuse, not the requirement of a local depositor preference. Absent in the proposed rule cited by the OTS is a discussion of the possibility that the OTS would promulgate a rule that apportions stock subscription rights according to where investors live. Moreover, over half of the comments the OTS has received on the Interim Final Rule have addressed the geographic preference portion. This fact alone rebuts any suggestion by the OTS that the public had sufficiently commented on the rule. Therefore, the Court concludes that the public was denied an opportunity to comment on the Interim Final Rule; the OTS' assertions to the contrary notwithstanding.

**2. The OTS Has Not Served The Public Interest In By-Passing Notice And Comment Procedures In This Situation.**

■■■ The OTS has argued that the Interim Final Rule serves the public interest because the only alternative to issuing the rule was an administrative moratorium on conversions. (Def.'s Mot. to Dismiss or for Summ.J. at 24.) According to the OTS, such a moratorium is not in the public interest because it would prevent converting associations from raising capital in a favorable environment. *Id.* (quoting 59 Fed.Reg. at 22732.)

The Court finds that the OTS' argument is contrary to fact and case law. First, the OTS' actions contradict its argument. Despite arguing that notice and comment procedures had to be ignored to ensure access to capital for converting associations, the OTS has waived the local depositor preference for over eighteen (18) applicants. If the OTS were truly concerned with access to capital it would not have granted so many waivers.

Second, the OTS has not shown that access to capital would not be enhanced if all members of an association were allowed to participate equally.

Third, the jurisprudence of this Circuit further undercuts the OTS' argument. The OTS seems concerned that if it had waited and followed the traditional notice and comment procedures, many savings associations would have quickly submitted conversion applications before the new rule went into effect. Yet in 1992, this Circuit foreclosed such an argument in *Tennessee Gas Pipeline Co. v. Federal Energy Regulatory Comm'n,* 969 F.2d 1141 (D.C.Cir.1992). In that case, the Commission issued, without prior notice and opportunity for comment, an interim final rule based upon the APA's "good cause" exception. *Id.* at 1143. The Commission's rationale was its fear that regulated entities would accelerate their activities to avoid the application of the new rule. *Id.* The court reasoned that, absent special circumstances, a regulated entity's acceleration of activity to avoid a new rule was not a "good cause." *See Id.* at 1145–46.

It follows from *Tennessee Gas* that the OTS can not justify use of the "good cause" exception out of fear that a savings association will apply for conversion before a new rule becomes effective.

**3. Congressional Hearings And Legislation Introduced in Related Banking Areas That Do Not Specifically Address Geographic Preferences Are Not a "Legislative Demand For Action."**

The OTS has also stated that the Interim Final Rule was issued in response to a "legislative demand for action." (Def.'s Mot. to Dismiss or for Summ.J. at 24.) This "demand" consisted of several pieces of introduced legislation and hearings regarding general issues of conversion of savings associations.

However, none of the bills cited by the OTS have been enacted or even discuss the possibility of a local depositor preference. Furthermore, the hearings the OTS refers to do not address the issuance of a rule requiring a local depositor preference.

Since the local depositor preference was never really addressed in any of the legislative processes referred to by the OTS, the Court finds there was no legislative demand for action.

### 4. The Practical Reach Of The Geographic Preference Negates The OTS' Claim That The Rule Is Narrow In Scope.

■ This Circuit has stated that the greater the reach of a regulatory rule, the greater the need for public comment. *American Fed'n of Gov't Emp. v. Block*, 655 F.2d 1153, 1156 (D.C.Cir.1981) (citing *National Nutritional Foods Ass'n v. Kennedy*, 572 F.2d 377, 385–86 (2d Cir.1978)).

Despite the fact that the OTS has asserted that the rule was narrowly crafted to deal with a discrete problem, the facts demonstrate the true expansiveness of the rule. First, since the implementation of the Interim Final Rule, it has been employed to no less than fourteen converting associations. Second, the OTS has indicated that it will employ the rule in the future as well. Last, the fact that over half of the comments received on the Interim Final Rule dealt with the geographic preference shows the broad scope of the provision. For these reasons, the Court finds the rule to be quite expansive.

### 5. The OTS' Ignorance As To When A Final Rule Will Be Issued Demonstrates That The Rule Is Not Limited In Time.

■ This Circuit has recognized that temporal limitations of an interim rule are a significant factor in analyzing a rule promulgated under the "good cause" exception. *Mid–Tex Elec. Co-op., Inc. v. F.E.R.C.*, 822 F.2d at 1132. In *Mid–Tex* the court found that the agency's submission of a timetable regarding action on a final rule demonstrated the temporariness of the litigated rule and was, thus, one factor suggesting that the agency had met the good cause exception in the case. *See Mid–Tex*, 822 F.2d at 1132, 1132 n. 43.

In contrast, the OTS has not made a similar showing here. The OTS has indicated that the Director will make a decision as to the contents of the final rule by the end of September. (Def.'s Mot. to Dismiss or for Summ.J. at 7, 26.) However, the OTS admits that it intends to have the Office of Management and Budget and Treasury Departments review the rule as well. *Id.* As a result, even the OTS does not know when a final rule will likely be promulgated. Based on the foregoing, the Court finds that the OTS has not shown that the rule is limited in time.

### C. Even The Combined Weight Of The Factors Cited By The OTS Do Not Justify The By-passing Of Notice And Comment Procedures.

As a fall-back, the OTS asserts that even if the Court decides that none of the factors standing alone constitute "good cause," the standard has been met because of the combined weight of the factors cited by the OTS. (Def.'s Mot. to Dismiss or for Summ.J. at 26.) The OTS relies on the *Mid–Tex* court's finding that the combined effect of the factors may satisfy the "good cause" standard. *Mid–Tex*, 822 F.2d at 1132–33.

This argument by the OTS is also meritless. As the Court has indicated previously in this Opinion, the factors cited by the OTS are essentially groundless. Therefore, even considering all the factors together, the Court holds that the OTS has failed to meet the "good cause" standard.

### III. TDA's REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF MAY BE GRANTED BY THE COURT.

According to the Declaratory Judgement Act, this Court has the authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The OTS claims that injunctive and declaratory relief are not proper because TDA is really only challenging specific conversion plans that, as of yet, have not adversely affected their members.

As indicated previously in this Opinion, the Court finds that TDA's challenge is to the

rule-making procedure, not a specific conversion plan, and that the OTS did not have "good cause" to by-pass notice and comment procedures. Therefore, this Court has the power to grant relief to the Plaintiff.

## CONCLUSION

For all the reasons previously stated, the Plaintiff's Motion for Summary Judgement shall be granted. Therefore, the Court hereby declares the provision of the Interim Final Rule regarding a local depositor preference void and enjoins the Office of Thrift Supervision from proceeding with mutual-to-stock conversions until such time as a new rule is finalized in accordance with the notice and comment procedures of the APA. The Court shall enter an Order of even date herewith in accordance with this Opinion.

## ORDER

Upon careful consideration of the parties' Memoranda, all the papers filed in this case, and the applicable law, and for the reasons articulated in the Opinion of the Court of even date herewith, it is, by the Court, this 29 day of September, 1994,

ORDERED that the Plaintiff's Motion for Summary Judgement shall be GRANTED; and it is

FURTHER ORDERED that the Office of Thrift Supervision shall be enjoined from proceeding with conversions of mutual savings associations that require the application of the "local" depositor preference, until such time as a new rule is finalized in accordance with the notice and comment procedures of the Administrative Procedure Act.

