# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 11, 2013          Decided October 18, 2013

No. 12-1179

DAIMLER TRUCKS NORTH AMERICA LLC, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

NAVISTAR, INC.,
INTERVENOR

———

Consolidated with 12-1270

———

On Petitions for Review of a Final Agency Action by
The United States Environmental Protection Agency

———

*Christopher T. Handman* argued the cause for the petitioners. *R. Latane Montague*, *Sean Marotta*, *Kathryn L. Lannon*, *Julie R. Domike* and *William F. Lane* were on brief. *Alec C. Zacaroli* entered an appearance.

*Michele L. Walter*, Attorney, United States Department of Justice, argued the cause for the respondent. *Michael J. Horowitz*, Attorney Advisor, United States Environmental Protection Agency, was on brief.

*Cary R. Perlman* and *Laurence H. Levine* were on brief for intervenor Navistar, Inc. in support of the respondent.

Before: HENDERSON, GRIFFITH and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In January 2012, the United States Environmental Protection Agency (EPA) promulgated an interim final rule (IFR) authorizing EPA to issue certificates of conformity to diesel truck engine manufacturers for 2012 and 2013 model-year engines notwithstanding the engines did not conform to EPA's emission standard for nitrogen oxides ($NO_x$), promulgated under section 202(a) of the Clean Air Act (CAA), 42 U.S.C. § 7521(a)—provided the manufacturer paid the government a non-conformance penalty (NCP) as established in the IFR. Nonconformance Penalties for On-Highway Heavy Heavy-Duty Diesel Engines, 77 Fed. Reg. 4678 (Jan. 31, 2012). Pursuant to the IFR, EPA issued manufacturer Navistar, Inc. four 2012 model year certificates of conformity (Certificates), requiring payment of the NCP for each engine produced. Four manufacturers of heavy-duty diesel engines and trucks—petitioners Daimler Trucks North America LLC; Detroit Diesel Corporation; Mack Trucks, Inc.; and Volvo Group North America, LLC (collectively, Daimler)—petitioned for review of the IFR on both procedural and substantive grounds

and, subsequently, for review of the four Certificates on the ground that they were impermissibly issued pursuant to the purportedly invalid IFR. In June 2012 this court vacated the IFR on the ground it was unlawfully promulgated without notice and opportunity for comment. *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 96 (D.C. Cir. 2012). Three months later, after notice and comment, EPA replaced the IFR with a final NCP rule establishing new—and higher—NCPs (Final NCP Rule). Nonconformance Penalties for On-Highway Heavy-Duty Diesel Engines, 77 Fed. Reg. 54,384 (Sept. 5, 2012). Thus, with the publication of the Final NCP Rule in September 2012, the four Certificates ceased to require that Navistar pay the NCPs established in the IFR—the subject of Daimler's challenge—and with their expiration at the end of the 2012 model year, the Certificates ceased to have any effect whatsoever. Accordingly, we conclude Daimler's challenge to the Certificates is moot and we dismiss the petitions for review thereof.

## I.

The CAA prohibits the introduction into commerce of any new motor vehicle engine unless it is covered by a certificate of conformity with emission standards prescribed pursuant to CAA section 202(a), 42 U.S.C. § 7521(a). 42 U.S.C. § 7522(a)[1]; *see id.* § 7525(a) (setting out procedure for

---

[1]CAA section 203(a) provides in relevant part:

The following acts and the causing thereof are prohibited—

(1) in the case of a manufacturer of new motor vehicles or new motor vehicle engines for distribution in commerce, the sale, or the offering for sale, or the introduction, or delivery for introduction, into commerce, or (in the case of any person, except as provided by regulation of the Administrator), the importation into the United States, of any new motor vehicle or new motor

testing engines and issuing certificates of conformity).  At the same time, CAA section 206(g) authorizes EPA to issue a certificate of conformity for a vehicle or engine "notwithstanding the failure of such vehicles or engines to meet such standard if such manufacturer pays a nonconformance penalty as provided under regulations promulgated by [EPA]."  42 U.S.C. § 7525(g)(1).

In January 2001, EPA promulgated the "2010 $NO_x$ standard" requiring that $NO_x$ emissions from heavy-duty diesel engines be reduced by 95 per cent—to .20 grams of $NO_x$ per horsepower-hour—no later than model year 2010. IFR, 77 Fed. Reg. at 4680-81; *Mack Trucks*, 682 F.3d at 89. "By delaying the effective date until 2010, EPA gave industry nine years to innovate the necessary new technologies." *Mack Trucks*, 682 F.3d at 89.  Most diesel engine manufacturers used the lag time to adopt, at substantial cost, a technology known as "selective catalytic reduction," which converts $NO_x$ into nitrogen and water and has enabled them to timely meet the 2010 $NO_x$ standard.  *Id.*  Navistar, however, opted for an alternative technology—"exhaust gas recirculation"—that turned out to be less effective.  As a result, Navistar's $NO_x$ reductions fell short of the 2010 $NO_x$ standard and when the standard took effect, Navistar was

---

> vehicle engine, manufactured after the effective date of regulations under this part which are applicable to such vehicle or engine unless such vehicle or engine is covered by a certificate of conformity issued (and in effect) under regulations prescribed under this part . . . .

42 U.S.C. § 7522(a)(1).

forced to use its banked emission credits to continue producing engines.[2]

In October 2011, Navistar informed EPA that its emission credits were due to run out sometime in 2012 and it would then have to stop producing its engines. In response, EPA "hurriedly promulgated" the IFR on January 31, 2012—without notice or comment—"to make NCPs available to Navistar." *Mack Trucks*, 682 F.3d at 90 & n.3. Pursuant to CAA section 206(g), the IFR authorized issuance of a certificate of conformity for a non-conforming engine—provided the manufacturer paid a NCP not to exceed $1,919 and its engine's $NO_x$ emissions did not exceed an upper limit of 0.50 grams of $NO_x$ per horsepower-hour—two-and-one-half times the emissions permitted under the 2010 $NO_x$ standard. *Id.*; 77 Fed. Reg. at 4682–83. To support its failure to provide for notice and comment—required under the Administrative Procedure Act (APA), 5 U.S.C. § 553(b)—EPA invoked the statutory "good cause" exception, which applies when an "agency for good cause finds . . . that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." *Id*. § 553(b)(B). Simultaneously with the IFR, EPA published a "parallel" Notice of Proposed Rulemaking, which gave notice of, and solicited comments on, a permanent final rule. Nonconformance Penalties for On-Highway Heavy-Duty Diesel Engines, 77 Fed. Reg. 4736 (Jan. 31, 2012). EPA

---

[2]EPA's "Averaging, Banking and Trading" program "allows engine manufacturers who produce engines cleaner than those required by the regulations to generate 'credits' that they may then use to offset higher emitting engines ('averaging'), save for future use ('banking'), or sell to other manufacturers ('trading')." *Nat'l Petrochem. & Refiners Ass'n v. EPA*, 287 F.3d 1130, 1146 (D.C. Cir. 2002) (citing 40 C.F.R. § 86.004-15).

expressly advised therein: "Should the Final Rule establish different NCPs for heavy heavy-duty engines than the interim NCPs, we could apply those new NCPs to any engines produced on or after [the Final Rule's likely effective date] instead of the interim NCPs." *Id.* at 4738. Daimler timely petitioned for review of the IFR.

Pursuant to the IFR, EPA subsequently granted Navistar's applications for the four challenged Certificates—two Certificates effective on February 13, 2012, one on April 11, 2012 and one on April 16, 2012. Each Certificate remained in effect for the duration of the 2012 model year.[3] The cover letters accompanying the Certificates advised:

> Please note that calculation of the [NCP] rate is to be based on the interim final rule until such time as the final rule is effective. Once the final rule becomes effective, calculation of the NCP rate is to be based on the formula contained therein.

Letters from EPA to Navistar, Inc. (Feb. 14, 2012; Apr. 12, 2012; Apr. 17, 2012) (JA 1, 9, 15). Daimler timely filed petitions for review of each of the Certificates.

We held this proceeding in abeyance pending a decision in *Mack Trucks*, which issued on June 12, 2012, vacating the IFR and remanding to EPA for further proceedings. We rejected EPA's reliance on the good cause exception to the APA's notice-and-comment requirement, concluding the IFR

---

[3]The duration of the model year is not clear from the record but under CAA section 202(b)(3), it had to end no later than the close of calendar year 2012. *See* 42 U.S.C. § 7521(b)(3)(A)(i) ("The term 'model year' with reference to any specific calendar year means the manufacturer's annual production period (as determined by the Administrator) which includes January 1 of such calendar year. If the manufacturer has no annual production period, the term 'model year' shall mean the calendar year.").

did not fit any of the three statutory good-cause criteria as notice and comment was not "impracticable, unnecessary, or contrary to the public interest." *Mack Trucks*, 682 F.3d at 93-95. Indeed, we observed that "the only purpose of the IFR" was, "as Petitioners put it, 'to rescue a lone manufacturer from the folly of its own choices.' " *Id*. at 93.

In light of our vacatur of the IFR, counsel for Daimler requested that EPA "invalidate" the Certificates. Letter from Kilpatrick Townsend & Stockton LLP to EPA at 1 (June 19, 2012); Letter from Hogan Lovells US LLP to EPA at 1 (Aug. 8, 2012). On August 31, 2012, EPA denied the requests in light of the impending publication of its Final NCP Rule, which established new, higher NCPs and by its terms superseded the IFR. 77 Fed. Reg. at 54,385-87 (increasing maximum 2012 NCP to $3,775—to "apply for all engines introduced into commerce on or after September 5, 2012"). Daimler subsequently petitioned for review of the Final NCP Rule. *See Daimler Trucks N. Am. LLC v. EPA*, No. 12-1433 (D.C. Cir. Oct. 26, 2012).

## II.

Daimler challenges the Certificates on the ground they were improperly issued based on the invalid and now-vacated IFR. In response, EPA argues, first, that the court is without subject-matter jurisdiction—because Daimler lacks standing under Article III of the United States Constitution and because the challenge is now moot—and, on the merits, that the Certificates remain valid until EPA revokes them pursuant to its regulatory revocation process. We conclude Daimler's challenge is moot and therefore do not reach EPA's alternative arguments.

"Article III, Section 2 of the Constitution permits federal courts to adjudicate only actual, ongoing controversies." *United Bhd. of Carpenters & Joiners v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, 721 F.3d 678, 687 (D.C. Cir.

2013). Courts "may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (quotation marks and brackets omitted). Moreover, the case "must remain live 'at all stages of review, not merely at the time the complaint is filed.' " *United Bhd. of Carpenters*, 721 F.3d at 687 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)); *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990) ("Th[e] case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. To sustain our jurisdiction in the present case, it is not enough that a dispute was very much alive when suit was filed, or when review was obtained in the Court of Appeals." (alteration added)). "For that reason, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). In addition, "the mootness doctrine requires a federal court to refrain from deciding [a case] if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *LaRoque v. Holder*, 679 F.3d 905, 907 (D.C. Cir. 2012) (quotation marks and brackets omitted) (brackets added). In this case, two such events combine to make us conclude that Daimler is unable to demonstrate "a more-than-speculative chance" of obtaining redress.

First, in September 2012, EPA replaced the IFR with the Final NCP Rule—which adopted different NCPs from the IFR. Nonconformance Penalties for On-Highway Heavy-Duty Diesel Engines, 77 Fed. Reg. 54,384, 54,385, 54,387 (Sept. 5, 2012). From the start, Daimler had sought to prevent

EPA from allowing Navistar to market its nonconforming engines by paying the IFR's lower NCP—which, as noted, Daimler contended (successfully) was improperly promulgated (without the requisite notice and comment and in disregard of EPA's substantive NCP regulations). *See* Nonbinding Statement of Issues To Be Raised at 2, *Daimler Trucks N. Am. LLC v. EPA*, No. 12-1179 (D.C. Cir. Apr. 20, 2012) (seeking vacatur of Certificates "because they were authorized solely on the basis of payment of nonconformance penalties made available through the IFR"); Nonbinding Statement of Issues To Be Raised at 1-2, *Daimler Trucks N. Am. LLC v. EPA*, No. 12-1270 (D.C. Cir. July 26, 2012) ("Pursuant to the Interim Final Rule, Navistar obtained certificates of conformity that permitted it to produce and sell the otherwise unlawful engines in return for paying the penalty set by the Interim Final Rule. . . . [T]he certificates of conformity issued to Navistar must be vacated because the Interim Final Rule they were predicated on has been vacated."); Pet'rs' Br. 16-18, *Mack Trucks, Inc. v. EPA*, Nos. 12-1078 et al. (D.C. Cir. Mar. 12, 2012). But as of September 5, 2012, when the Final NCP rule took effect—with new and higher penalties—Daimler no longer faced any additional injury from the IFR's NCP regime. As of that date, Navistar was subject instead to the new NCPs established in the Final NCP Rule, which by its terms "appl[ied] for all engines introduced into commerce on or after September 5, 2012." 77 Fed. Reg. at 54,387; *see id.* at 54,385 (increasing maximum 2012 NCP to $3,775). And the Final NCP Rule, along with its new NCPs, is the subject of a separate challenge pending before the Court. *See Daimler Trucks N. Am. LLC v. EPA*, No. 12-1433 (D.C. Cir. filed Oct. 26, 2012; oral argument scheduled Oct. 22, 2013).

Second, the 2012 model year—the model year the challenged Certificates covered—has ended. *See* 42 U.S.C. § 7521(b)(3) (providing "model year" ends no later than close

of applicable calendar year; *see supra* note 4). Thus, the Certificates have now "expired"—as Daimler acknowledges, Reply Br. 3. They can no longer profit Navistar or injure Daimler.

Daimler contends the controversy is not moot "because a decision voiding Navistar's certificates will make it likely that Petitioners will receive redress for their past economic injuries"—either through an EPA enforcement action against Navistar under CAA sections 204 and 205(a), 42 U.S.C. §§ 7523, 7524(a), or in a citizen enforcement action brought by Daimler under CAA section 304(a), 42 U.S.C. § 7604(a). Reply Br. 17 (citing Reply Br. 14-16). According to Daimler, those actions could result in the award of monetary penalties against Navistar that would divest Navistar of any competitive gain it would not have obtained in the absence of the improperly issued certificates, thus providing redress to Daimler and Navistar's other competitors. Daimler's rationale fails to persuade us. Even assuming *arguendo* that penalties awarded to the United States Treasury could qualify as redress to Daimler, the prospect of such relief in an EPA enforcement action or citizen suit by Daimler is unduly speculative. *See Univ. Med. Ctr. of S. Nev. v. Shalala,* 173 F.3d 438, 442 (D.C. Cir. 1999) (where redressability depends on prevailing in ensuing action, court would be required to assess "how likely it was that [the party] would succeed in the second suit").

First, with respect to the possibility of an EPA enforcement action, EPA has already rejected Daimler's request to revoke the certificates, concluding that revocation is "not appropriate or necessary" in light of the issuance of the Final NCP Rule. Pet'rs' Br. A34. In that light, it is difficult to suppose that EPA would bring an enforcement action against Navistar. Indeed, the statute would require a court to take into account, inter alia, "the gravity of the violation" in considering whether, and in what amount, to grant relief. 42

U.S.C. § 7524(b). In its brief here, EPA notes that Navistar "relied in good faith" on the challenged certificates and that any enforcement action by EPA would be "highly unlikely." Resp. Br. 29. The circumstances thus are unlike those in *Bennett v. Donovan*, 703 F.3d 582 (D.C. Cir. 2013), on which Daimler relies. In *Bennett*, this Court concluded that the plaintiffs established redressability because, if they prevailed, the defendant agency—there HUD—could subsequently take certain actions on its own to provide relief, thereby rendering relief "*likely*, as opposed to merely speculative." *Id*. at 589 (emphasis in original).

Second, regarding Daimler's possible pursuit of a citizen suit, the likelihood of monetary penalties is likewise speculative. Assuming that Daimler could in fact pursue a citizen suit under CAA section 304(a) in these circumstances—an issue we need not resolve—EPA could intervene in the action and present its views on the propriety of imposing penalties (presumably against their imposition). *See* 42 U.S.C. § 7604(c)(2). In assessing whether to award relief, the court in an action under section 304(a) considers, inter alia*,* "the violator's full compliance history and good faith efforts to comply," the "seriousness of the violation," the "duration of the violation" and any other "factors as justice may require." 42 U.S.C. § 7413(e)(l). Here, to the extent Navistar could be found to have violated the CAA by operating under certificates that subsequently were found to have been issued improperly by EPA, Navistar acted in good faith reliance on the validity of the certificates, EPA's brief acknowledges that it considers Navistar to have acted in good faith, the violation stemmed from the agency's failure to follow its own procedural requirements and any violation took place for a limited time before issuance of the Final Rule. *Cf. Illinois v. Krull,* 480 U.S. 340, 356-57, 360 (1987) (officer's reliance on state statute later declared unconstitutional was "objectively reasonable" and in "objective good faith").

In support of its redress-through-penalties theory, Daimler relies on the United States Supreme Court's recent decision in *Decker v. Northwest Environmental Defense Center*, 133 S. Ct. 1326 (2013). *See* Rule 28(j) Letter, *Daimler Trucks N. Am, LLC v. EPA*, Nos. 12-1179 & 12-1270 (filed Apr. 9, 2013). Its reliance thereon is misplaced.

In *Decker*, the respondent environmental association brought a citizen action under section 505(a) of the Clean Water Act (CWA), 33 U.S.C. § 1365(a)—the CWA's analog to CAA section 304(a)—against logging and paper-products companies, as well as state and local governments and officials, alleging they violated EPA's "Industrial Stormwater Rule"—and consequently the CWA—by causing stormwater runoff to be discharged into two waterways without obtaining permits. *Decker*, 133 S. Ct. at 1333. The petitioners argued that the controversy was mooted by an amendment to EPA's Industrial Stormwater Rule (promulgated three days before the scheduled oral argument), which clarified that permits were not in fact required for the discharges at issue. The Supreme Court rejected the mootness argument, reasoning that, "despite the recent amendment, a live controversy continue[d] to exist regarding whether [the defendants] may be held liable for unlawful discharges under the earlier version of the Industrial Stormwater Rule." *Id*. at 1335. The Court explained that on remand the district court "might order some remedy for their past violations," noting that the CWA "contemplates civil penalties of up to $25,000 per day, as well as attorney's fees for prevailing parties." *Id*. (citing 33 U.S.C. §§ 1319(d), 1365(d)). Moreover, the Court observed, the plaintiff requested "injunctive relief for both past and ongoing violations, in part in the form of an order that petitioners incur certain environmental-remediation costs to alleviate harms attributable to their past discharges." *Id*. Under such circumstances, the Court concluded, "the cases remain[ed] live and justiciable, for the possibility of some remedy for a

proven past violation is real and not remote." *Id*. As already explained, here, unlike in *Decker*, the prospect of redress for any past violation is remote and speculative.

For the foregoing reasons, we dismiss the petitions for review as moot.

*So ordered.*