# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 22, 2013          Decided December 11, 2013

No. 12-1433

DAIMLER TRUCKS NORTH AMERICA LLC, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

NAVISTAR, INC.,
INTERVENOR

———

On Petition for Review of a Final Rule Promulgated
by the United States Environmental Protection Agency

———

*Christopher T. Handman* argued the cause for petitioners. With him on the briefs were *Julie R. Domike*, *R. Latane Montague*, *Sean Marotta*, *Kathryn L. Lannon*, *William F. Lane*, and *Alec C. Zacaroli*.

*Michele L. Walter*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief were *Robert G. Dreher*, Acting Assistant Attorney General, and *Michael J. Horowitz*, Attorney Advisor, U.S. Environmental Protection Agency.

*Cary R. Perlman* and *Laurence H. Levine* were on the brief for intervenor Navistar, Inc. in support of respondent.

Before: HENDERSON, ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: To carry out the 1977 amendments to the Clean Air Act, the Environmental Protection Agency ("EPA") promulgated a rule in 2001 requiring a 95% reduction in nitrogen oxide ("$NO_x$") emissions by heavy-duty motor vehicles by 2010. At the time, no technology existed to achieve these reductions. EPA regulations provide, as Congress has authorized, for nonconformance penalties ("NCPs") to protect technological laggards by allowing them to pay a penalty for engines temporarily unable to meet a new or revised emission standard. In a 2012 rulemaking, EPA established NCPs, having determined that its three regulatory criteria for issuing these penalties were met for heavy heavy-duty diesel engines, including that one manufacturer, Navistar, Inc., was a technological laggard. Petitioners, who are competitors of Navistar, Inc., challenge the 2012 Rule on procedural and substantive grounds. Because of the lack of adequate notice and opportunity to comment on the amendments to the "substantial work" regulation, we grant the petition. In light of EPA's counsel's statement during oral argument that due to the changed circumstances of Navistar, Inc. vacatur would cause no harm, we vacate the 2012 Rule.

## I.

In the 1977 amendments to the Clean Air Act, Congress required the Administrator of EPA to "prescribe . . . standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines,

which in [the Administrator's] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1). The standards for $NO_x$ emissions from heavy-duty vehicles and engines manufactured after model year 1983 must "reflect the greatest degree of emission reduction achievable through the application of technology which the Administrator determines will be available for the model year to which such standards apply, giving appropriate consideration to cost, energy, and safety factors." *Id.* § 7521(a)(3)(A)(i).

Before introducing vehicles and engines into commerce, manufacturers are required to obtain certificates of conformity from EPA demonstrating compliance with relevant emission standards. *Id.* § 7525(a). Certificates shall be issued, however, "notwithstanding the failure of such vehicles or engines to meet [the applicable] standard if [the] manufacturer pays a nonconformance penalty as provided under regulations promulgated by the Administrator after notice and opportunity for public hearing." *Id.* § 7525(g)(1). EPA may not offer NCPs where a manufacturer's level of compliance exceeds the level determined to be "practicable" under EPA's regulations. *Id.* § 7525(g)(2). Also, the penalty amount established under the Administrator's formula must, as relevant here, take into account the extent to which emissions exceed the standard, increase periodically to create incentives to achieve compliance, and "remove any competitive disadvantage" to compliant manufacturers. *Id.* § 7525(g)(3).

In 1985, EPA promulgated the Phase I Rule establishing the regulatory framework for NCPs. *Control of Air Pollution from New Motor Vehicles and New Motor Vehicle Engines; Nonconformance Penalties for Heavy-Duty Engines and Heavy-Duty Vehicles, Including Light-Duty Trucks*, 50 Fed. Reg. 35,374 (Aug. 30 1985) (to be codified at 40 C.F.R. pt. 86). This

rule identified three criteria that must be met in order for a subclass of heavy-duty engines or vehicles to be eligible for NCPs. *Id.* at 35,388 (to be codified at 40 C.F.R. § 86.1103–87). EPA must find that (1) an emission standard is more difficult to achieve, either because the standard itself becomes more stringent, or because of its interaction with another new or revised standard; (2) "substantial work *will* be required to meet the standard"; and (3) "there is likely to be a technological laggard." *Id.* (emphasis added). The rule defined "substantial work" to "mean[] the application of technology not previously used in an engine or vehicle class or subclass, or the significant modification of existing technology or design parameters . . . ." *Id.* The rule also established the formula for calculating the amount of the penalty when the three criteria are met. *Id.* at 35,394–96 (codified at 40 C.F.R. § 86.1113–87(a)). One factor is the cost of compliance with the standard relative to the "upper limit," i.e., the highest emission level at which an engine or vehicle can be certified using an NCP, *id.* at 35,376, which the Phase I Rule made equal to the previous emission standard, *id.* at 35,388 (codified at 40 C.F.R. § 86.1104–87). *See also* 42 U.S.C. § 7525(g)(2), (g)(3)(E). An alternate path to certification for certain engines that do not meet relevant emission standards is averaging, banking, and trading emission credits. 40 C.F.R. § 86.007–15. *See Nat'l Petrochemical & Refiners Ass'n v. EPA*, 287 F.3d 1130, 1148 (D.C. Cir. 2002) (citing *Certification Programs for Banking and Trading of Oxides of Nitrogen and Particulate Emission Credits for Heavy-Duty Engines*, 54 Fed. Reg. 22,652, 22,666 (May 25, 1989) (to be codified at 40 C.F.R. pt. 86)).

In 2001, EPA promulgated the rule requiring a 95% reduction in $NO_x$ emissions from heavy-duty engines by 2010. *Control of Air Pollution from New Motor Vehicles*: *Heavy-Duty Engine and Vehicle Standards and Highway Diesel Fuel Sulfur Control Requirements*, 66 Fed. Reg. 5002, 5002 (Jan. 18, 2001)

(to be codified at 40 C.F.R. pts. 69, 80, and 86) ("2001 Rule"). Because compliance would require "a new technology solution," *id.* at 5046, manufacturers were afforded several years to comply with the new 0.20 grams per brake-horsepower-hour (g/bhp-hr) standard, which was phased in for heavy-duty diesel engines between 2007 and 2010. *Id.* at 5005. By 2010, petitioners and other manufacturers had developed selective catalytic reduction aftertreatment technology ("SCR") and had succeeded in meeting the 0.20 g/bhp-hr standard. Navistar, Inc. pursued an alternative path to compliance, relying on developing advanced exhaust gas recirculation technology ("EGR"). When the new $NO_x$ standard became fully effective in 2010, Navistar, Inc. had not reached the 0.20 g/bhp-hr level using EGR, but continued to obtain certificates of conformity for its vehicles by using banked emission credits. In late 2011, Navistar, Inc. advised EPA that its supply of emission credits would be inadequate for its model year 2012 heavy heavy-duty engines.

On January 31, 2012, EPA promulgated an interim rule establishing NCPs for manufacturers of heavy heavy-duty diesel engines in model years 2012 and 2013 for the 0.20 g/bhp-hr $NO_x$ standard. *Nonconformance Penalties for On-Highway Heavy Heavy-Duty Diesel Engines*, 77 Fed. Reg. 4678 (to be codified at 40 C.F.R. pt. 86) ("Interim Final Rule"). This rule was vacated in *Mack Trucks, Inc. v. EPA*, 682 F.3d 87 (D.C. Cir. 2012) ("*Mack Trucks*"), because EPA lacked good cause to bypass notice-and-comment requirements.

The same day as it issued the Interim Final Rule, EPA published a notice of proposed rulemaking for a final rule. *Nonconformance Penalties for On-Highway Heavy-Duty Diesel Engines*, 77 Fed. Reg. 4736 (Jan. 31, 2012) (to be codified at 40 C.F.R. pt. 86) ("NPRM"). In the NPRM, EPA stated it believed that the three NCP criteria had been met: (1) the "technology forcing" 0.20 g/bhp-hr $NO_x$ standard was more difficult to meet

than the previous $NO_x$ emission standard; (2) "substantial work *was* required" to meet the 0.20 g/bhp-hr standard because all heavy heavy-duty diesel engines certified without relying on emission credits were using new aftertreatment systems to meet the standard; and (3) there was "a significant likelihood" that NCPs would "be needed by an engine manufacturer that ha[d] not yet met the requirements for technological reasons" and was expected not "to have sufficient credits to cover its entire model year 2012 production." NPRM, 77 Fed. Reg. at 4738 (emphasis added). EPA proposed NCPs on the basis of its existing formula, as modified to permit setting "the upper limit at a level below the previous standard if [EPA] determine[s] that the lower level is achievable by all engines," and "in unusual circumstances" above the previous standard, inasmuch as even noncompliant manufacturers had achieved the proposed 0.50 g/bhp-hr emission level. *Id*. at 4740, 4748–49 (amending 40 C.F.R. § 86.1104–91, "Determination of upper limits," and 40 C.F.R. § 86.1105–87, "Emission standards for which nonconformance penalties are available").

EPA promulgated the final rule that petitioners now challenge on September 5, 2012. *Nonconformance Penalties for On-Highway Heavy-Duty Diesel Engines*, 77 Fed. Reg. 54,384 (to be codified at 40 C.F.R. pt. 86) ("2012 Rule"). EPA found the three criteria for NCPs had been met for $NO_x$ emissions from heavy heavy-duty diesel engines, *id.* at 54,388, and set NCPs accordingly, *id.* at 54,402. It also amended its regulations on upper limits, NCP payment procedures, and the "substantial work" criterion. *Id.* at 54,401–02. In response to comments, EPA stated that consistent with allowing technological laggards to be able to certify engines, the "substantial work" criterion "is to be evaluated based on the total amount of work needed to go from meeting the previous standard to meeting the current standard, regardless of the timing of such changes." *Id.* at 54,389. Commenters had objected that although "substantial

work" had been required to meet the $NO_x$ standard when it was introduced in 2001, this was no longer true because some manufacturers now had technology capable of meeting the standard. *Id.* EPA emphasized that "the important question is whether manufacturers who were using technology that met the previous standard would need to conduct significant work" to meet the new standard and that "[q]uestions about work that still needs to be done *at the point EPA begins an NCP rulemaking*" are irrelevant to the "substantial work" criterion. *Id.* at 54,390 (emphasis in original).

"To avoid this confusion for future NCPs," EPA in the 2012 Rule "clarifi[ed] . . . the regulatory text," *id.*, by amending 40 C.F.R. § 86.1103–87 to: (1) change the verb tense from "substantial work *will be* required to meet the standard" (emphasis added) to "substantial work *is* required" (emphasis added); (2) redefine "substantial work" from including the application of "technology not previously used in an engine or vehicle class or subclass" to including "technology that was not generally used in an engine or vehicle class or subclass to meet standards prior to the implementation of the new or revised standard"; and (3) add a new last sentence stating: "Substantial work is determined by the total amount of work required to meet the standard for which the NCP is offered, compared to the previous standard, irrespective of when EPA establishes the NCP." *Compare* Phase I Rule, 50 Fed. Reg. at 35,388 *with* 2012 Rule, 77 Fed. Reg. at 54,401.

## II.

Petitioners challenge the 2012 Rule on procedural and substantive grounds. They contend EPA failed to provide adequate notice and opportunity for comment before amending the regulatory definition of the "substantial work" criterion. They contend EPA did likewise before finding that after 2012

Navistar, Inc. would need to engage in "substantial work" to meet the $NO_x$ standard. They also contend that EPA erred in finding that Navistar, Inc. was a technological laggard, and that EPA's NCP calculation departed from past agency practice without rational explanation. For the following reasons we need only address the first contention.

Petitioners and EPA agree that the 2012 Rule revised the "substantial work" criterion and appear to disagree only on whether the final rule was a logical outgrowth of the proposed rule. *See* Pet'rs Br. 28; Resp't Br. 22; Reply Br. 4. EPA notes that petitioners do not ask the court to rule on "whether EPA's longstanding interpretation of the 'substantial work' criterion, as reflected in that revision, is a permissible construction of EPA's prior regulation to which EPA would be entitled deference under *Auer* [*v. Robbins,*] 519 U.S. [452,] 461 [(1997)]." Resp't Br. 22. Petitioners explain that because EPA promulgated a new regulation, they made no challenge to EPA's interpretation of the superceded prior regulation in this court. Reply Br. 10 n.2. They correctly describe the question now before the court as whether EPA improperly amended its regulation without warning "so that it would now jibe with EPA's preferred interpretation." *Id.*

"A final rule is a logical outgrowth of the proposed rule 'only if interested parties should have anticipated that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period.'" *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 94–95 (D.C. Cir. 2010) (quoting *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005)). Notice of agency action is "crucial to 'ensure that agency regulations are tested via exposure to diverse public comment, . . . to ensure fairness to affected parties, and . . . to give affected

parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review'." *Id.* at 95 (quoting *Int'l Union*, 407 F.3d at 1259). The court, however, will deem a final rule to be a logical outgrowth of a proposed rule "if a new round of notice and comment would not provide commentators with their first occasion to offer new and different criticisms which the agency might find convincing." *Id.* (quoting *Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1311 (D.C. Cir. 1991)). This avoids the "absurdity . . . that the agency can learn from the comments on its proposals only at the peril of starting a new procedural round of commentary." *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 546–47 (D.C. Cir. 1983).

In the NPRM, EPA proposed amendments to its regulations on the determination of upper limits, 40 C.F.R. § 86.1104–91, and the emission standards for which NCPs are available, 40 C.F.R. § 86.1105–87. NPRM, 77 Fed. Reg. at 4748–49. It did not propose, and offered no indication that it was contemplating, amendments to the "substantial work" criterion in 40 C.F.R. § 86.1103–87. The NPRM mentioned "substantial work" only in describing the "substantial work" criterion and concluding that it was satisfied for the 0.20 g/bhp-hr standard. *Id.* at 4738. In the 2012 Rule, EPA characterized its amendments to the "substantial work" criterion as "clarifying" the regulatory text rather than as a substantive amendment. 2012 Rule, 77 Fed. Reg. at 54,390. Petitioners, in contrast, maintain that the amendments made a significant change because, as comments on the proposed rule pointed out, the test set forth in EPA's regulations had always asked whether "substantial work" "will be required" to comply with a new or revised emission standard not, after the standard became effective, whether "substantial work" "*was* required" in the past. *See* Pet'rs Br. 20.

The revisions to the "substantial work" criterion in 40 C.F.R. § 86.1103–87 went beyond mere clarification. Since the Phase I Rule, EPA had been required to find that "substantial work will be required to meet the standard for which the NCP is offered," 50 Fed. Reg. at 35,388, and in previous NCP rulemakings EPA had evaluated the work required to meet the new emission standard by looking forward from the time the NCP was proposed. *See, e.g.*, *Control of Air Pollution from New Motor Vehicles and New Motor Vehicle Engines; Nonconformance Penalties for Heavy-Duty Engines and Heavy-Duty Vehicles, Including Heavy Light-Duty Trucks*, 58 Fed. Reg. 68,532, 68,534 (Dec. 28, 1993) (to be codified at 40 C.F.R. pt. 86); *Control of Air Pollution from New Motor Vehicles and New Motor Vehicle Engines; Nonconformance Penalties for 1996 and 1998 Model Year Emission Standards for Heavy-Duty Vehicles and Engines— Part II*, 61 Fed. Reg. 6949, 6951 (Feb. 23, 1996) (to be codified at 40 C.F.R. pt. 86). Under the second criterion in the 2012 Rule, EPA is to evaluate the work required to go from the old to the new emission standard, regardless of when the NCP is offered. 2012 Rule, 77 Fed. Reg. at 54,401. These two approaches yield a similar result when an NCP is offered at the same time or shortly after the announcement of a new emission standard but different inquiries arise when the NCP is offered after the new standard has taken effect. The technology-forcing $NO_x$ standard, *see Natural Res. Def. Council v. Thomas*, 805 F.2d 410, 428 n.30 (D.C. Cir. 1986), was announced in 2001 and became fully effective in 2010. The NCP was not proposed until 2012. In these circumstances, whether "substantial work" was required to meet the $NO_x$ standard when it was announced in 2001 and whether "substantial work" was required in 2012, two years after it became fully effective, are different questions.

EPA maintains that the amendments to its "substantial work" criterion are consistent with its longstanding

interpretation that it should "look[] forward from the point in time at which the new or revised standard is issued." Resp't Br. 27. EPA fails, however, to acknowledge that the 2012 Rule is the first rulemaking in which an NCP has been proposed after the new emission standard took effect. The timing of the offering of these penalties differed from previous NCPs, which as demonstrated in the Phase II through VI Rules had been proposed before the relevant new emission standards became effective.[1] By contrast here, although the $NO_x$ standard became

---

[1] *See Control of Air Pollution from New Motor Vehicles and New Motor Vehicle Engines; Nonconformance Penalties for Heavy-Duty Engines and Heavy-Duty Vehicles, Including Light-Duty Trucks*, 50 Fed. Reg. 53,454 (Dec. 31, 1985) (to be codified at 40 C.F.R. pt. 86) ("Phase II Rule"); *Control of Air Pollution from New Motor Vehicles and New Motor Vehicle Engines; Nonconformance Penalties for Heavy-Duty Engines and Heavy-Duty Vehicles, Including Heavy Light-Duty Trucks*, 55 Fed. Reg. 46,622 (Nov. 5, 1990) (to be codified at 40 C.F.R. pt. 86) ("Phase III Rule"); *Control of Air Pollution from New Motor Vehicles and New Motor Vehicle Engines; Nonconformance Penalties for Heavy-Duty Engines and Heavy-Duty Vehicles, Including Heavy Light-Duty Trucks*, 58 Fed. Reg. 68,532 (Dec. 28, 1993) (to be codified at 40 C.F.R. pt. 86) ("Phase IV Rule"); *Control of Air Pollution from New Motor Vehicles and New Motor Vehicle Engines; Nonconformance Penalties for 1996 Model Year Emission Standards for Heavy-Duty Vehicles*, 61 Fed. Reg. 6944 (Feb. 23, 1996) (to be codified at 40 C.F.R. pt. 86) ("Phase V Rule Part I"); *Control of Air Pollution from New Motor Vehicles and New Motor Vehicle Engines; Nonconformance Penalties for 1996 and 1998 Model Year Emission Standards for Heavy-Duty Vehicles and Engines—Part II*, 61 Fed. Reg. 6949 (Feb. 23, 1996) (to be codified at 40 C.F.R. pt. 86) ("Phase V Rule Part II"); *Control of Air Pollution from New Motor Vehicles and New Motor Vehicle Engines; Non-Conformance Penalties for 2004 and Later Model Year Emission Standards for Heavy-Duty Diesel Engines and Heavy-Duty Diesel Vehicles*, 67 Fed. Reg. 51,464 (Aug. 8, 2002) (to be codified at 40 C.F.R. pt. 86) ("Phase VI Rule"). Although the Phase V Rule, which offered NCPs

fully effective in 2010, Navistar, Inc.'s reliance on banked emission credits meant that no affected manufacturer required NCPs until 2012. In offering NCPs in this new situation, measuring "substantial work" as the amount of work needed to go from the old standard to the new standard was incompatible with the regulatory text in the Phase I Rule requiring EPA to find, before offering NCPs, that "substantial work will be required" to meet the new emission standard.

EPA's position that the amendments to the "substantial work" criterion in the 2012 Rule were a logical outgrowth of the proposed rule relies heavily on its claim that petitioners had actual notice of the change. *See* Resp't Br. 30–31 (citing *Small Refiner Lead Phase-Down Task Force*, 705 F.2d 506, 549 (D.C. Cir. 1983)). For support, EPA points to three documents: a letter from EPA to heavy-duty diesel engine manufacturers dated February 22, 2010; EPA's denial of a request by petitioners Daimler Trucks North America, LLC and Detroit Diesel Corporation for a stay of the Interim Final Rule published in January 2012; and the statement in the NPRM that "substantial work was required to meet the emission standard," 77 Fed. Reg. at 4738. Each of these documents includes a statement by EPA finding that "substantial work" *was* required, or was likely required, to meet the $NO_x$ standard. Although EPA is correct that the documents placed petitioners on notice that EPA's measurement of "substantial work" included work completed in the past, they neither stated nor suggested that EPA was contemplating amending the text of the second criterion adopted in the Phase I Rule.

No more availing is EPA's suggestion that the briefing in *Mack Trucks* and comments submitted in response to the NPRM

for 1996 standards, was finalized in February 1996, we note that the NCPs were proposed in 1994, well before the standards took effect.

demonstrate that petitioners had actual notice of EPA's change to the "substantial work" regulation.  Petitioners' arguments in comments that EPA's interpretation conflicted with the regulatory text of 40 C.F.R. § 86.1103–87 demonstrate only that they had notice of EPA's interpretation of the regulation, not that they had notice that EPA contemplated changing the regulatory text to encompass a backwards-looking inquiry.  Further, petitioners' notice of EPA's interpretation does not imply that the *public* had notice of, or an opportunity to comment on, EPA's changes to the regulation.

So too, EPA's position that the amended text of the "substantial work" criterion is consistent with twenty-seven years of agency practice ignores that the 2012 Rule is the first rulemaking in which EPA has proposed NCPs after the new emission standard went into effect.  EPA's prior conclusion that "substantial work" includes work required to reach the new emission standard when that standard is to take effect in the future is distinguishable from its revised approach that this is also true when NCPs are proposed after the standard has taken effect.  Contrary to EPA's suggestion that the 2002 Phase VI Rule, 67 Fed. Reg. at 51,464, *supra* note 1, which also proposed NCPs years after a new emission standard was announced, gave petitioners notice of its approach, the Phase VI Rule was promulgated before the standard announced in 1997 took effect in 2004.  *Control of Emissions of Air Pollution from Highway Heavy-Duty Engines*, 62 Fed. Reg. 54,694 (Oct. 21, 1997) (to be codified at 40 C.F.R. pts. 9 and 86).  Although the preamble to the Phase VI Rule discussed the amount of work that was anticipated when the emission standard was promulgated in 1997, it also addressed the "substantial work" left to be done to meet the standard in the future.  Phase VI Rule, 67 Fed. Reg. at 51,466.  Regarding the use of technologies that "have not previously been used in the on-highway heavy-duty diesel market," EPA stated that it "continue[d] to believe such new

technologies *will be* used by a number of engine manufacturers," and that "several manufacturers have indicated in recent statements that they *will* use new emission control technologies in order to achieve the 2004 standards." *Id.* (emphasis added). This forward-looking analysis is consistent with the text of the second criterion identified in the Phase I Rule instructing EPA to determine whether "substantial work will be required" to meet the new standard; it provided no indication that when an NCP was proposed years after the new emission standard had become effective, EPA would abandon the forward-looking analysis and look to "substantial work" completed in the past to meet the standard. EPA's attempt to fit the 2012 Rule's NCP into a consistent twenty-seven-year pattern of rulemaking fails.

Consequently, we cannot conclude that petitioners, "ex ante, should have anticipated the changes to be made in the course of the [2012] rulemaking," *City of Waukesha v. EPA*, 320 F.3d 228, 246 (D.C. Cir. 2003) (internal quotation omitted), to the "substantial work" criterion, 40 C.F.R. § 86.1103–87. If EPA wanted to revise its "substantial work" regulation, then it had to provide adequate notice and opportunity for comment, as it did with respect to the upper limit revision, *see* NPRM, 77 Fed. Reg. at 4740 (proposing to amend 40 C.F.R. § 86.1104–91), rather than making an unannounced change. *See* 42 U.S.C. § 7525(g)(1); *cf. Mack Trucks*, 682 F.3d at 92. EPA "entirely failed" to provide notice of its intention to amend its regulation in the NPRM, and "offered no persuasive evidence that possible objections to its final rule[] have been given sufficient consideration," *City of Waukesha*, 320 F.3d at 246 (internal citations omitted), instead treating its revision as a clarification rather than a substantive change. EPA's counsel's *post hoc* reasoning cannot fill the void. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983).

Accordingly, we grant the petition. Because the court typically vacates rules when an agency "entirely fail[s]" to provide notice and comment, *Shell Oil Co. v. EPA*, 950 F.2d 741, 752 (D.C. Cir. 1991), and especially in light of EPA's counsel's statement during oral argument that vacatur would not cause any harm because it has become clear that Navistar Inc.'s engines will be in compliance with the $NO_x$ standard by the beginning of 2014, *see* Oral Argument at 25:55 (Oct. 22, 2013), we vacate the 2012 final rule. *See Chamber of Commerce v. Sec. & Exch. Comm'n*, 443 F.3d 890, 908 (D.C. Cir. 2006) (quoting *Allied-Signal, Inc. v. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)).